**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Hopkins,<br><br>    Plaintiff,<br><br>v.<br><br>City of Apache Junction, et al.,<br><br>    Defendants. | No. CV-20-00735-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendants City of Apache Junction, Timothy Gearhart, Joshua Hooper, and Kenneth Eshenbaugh's Motion for Summary Judgment. (Doc. 51.) Defendants also filed a Statement of Facts in Support of their Motion for Summary Judgment. (Doc. 52.) Plaintiff filed a response, (Doc. 54), and a controverting statement of facts in opposition. (Doc. 54.) Defendants replied. (Doc. 57.) Oral argument was scheduled for September 13, 2021, but the Court now elects to rule without oral argument, finding that it is unnecessary. *See* LRCiv 7.2(f). The Court has considered the parties' pleadings and statements of fact and now will grant in part and deny in part Defendants' Motion for Summary Judgment.

**I.   BACKGROUND**

This action arose when the Plaintiff suffered injury after being apprehended for suspected shoplifting by Apache Junction Police. As Plaintiff's and Defendants' version of the facts differ substantially, the Court will list each parties' evidence separately. Each

parties' version of the events are as follows:[1]

### A. Defendants' Evidence

On March 30, 2019 at 12:53 A.M., City of Apache Junction Police Officers Eshenbaugh, Gearhart, and Hooper were dispatched to an alleged shoplifting at Circle K in Apache Junction, Arizona. (Doc. 52 ¶ 1.) The store clerk reported a male suspect grabbed items without paying and proceeded southbound on foot. (*Id*. ¶ 2.) The clerk described the suspect as wearing a tan shirt, faded jeans, and tan shoes. (*Id.*) Officer Eshenbaugh was searching an open desert area near Flat Iron Park when he heard someone running in the desert and pointed his flashlight at the noise. (*Id*. ¶ 3.) He observed a subject wearing dark clothes running west in the desert, and he believed the runner was potentially the shoplifting suspect. (*Id*. ¶ 4.) After dispatching his observations, Officer Eshenbaugh gave chase and yelled "Police, stop," several times. (*Id*. ¶¶ 4-5.) However, the subject continued to run through the desert. (*Id*. ¶ 5.) Based on this behavior, Officer Eshenbaugh believed that the subject was the shoplifter and continued the chase. (*Id*. ¶ 6.) Corporal Gearhart and Officer Hooper were in separate patrol vehicles and advised they were enroute to the area of the chase. (*Id*. ¶ 8.) As Officer Eshenbaugh gave chase, Officer Hooper arrived near where the chase was headed in his marked patrol vehicle with his emergency lights activated. (*Id*. ¶ 10.) Plaintiff and Officer Eshenbaugh rounded the corner of a building during the chase and Officer Eshenbaugh saw Officer Hooper in his marked patrol vehicle approximately 91 feet ahead with the emergency lights activated. (*Id*. ¶ 11.) Moments later, Corporal Gearhardt pulled up with his emergency lights activated as well. (*Id*.) Officer Hooper observed Plaintiff round the south corner of the building and proceed to run north on the sidewalk with Officer Eshenbaugh in pursuit. (*Id*. ¶ 13.) Officer Hooper faced Plaintiff as he approached. (*Id*.) Officer Hooper exited his vehicle immediately and yelled at the suspect to stop and get on the ground. (*Id*. ¶ 14.)

Defendants claim that Officer Hooper yelled "Stop!" repeatedly. (*Id*. ¶ 15.) While Plaintiff slowed his pace, he continued to jog toward Officer Hooper and refused to stop.

---

[1] For various reasons, there is no bodycam footage of the incident. (Doc. 51 at 5 n.4.)

(*Id*. ¶ 15.) Officer Hooper drew his Taser, stepped on the sidewalk, and ordered Plaintiff to "stop" and "get on the ground." (*Id*. ¶ 17.) Plaintiff closed to within 10 feet of Officer Hooper, made no statements to Officer Hooper, and had to physically turn his head to the left to see Officer Hooper as he got near to him. (*Id*.) Officer Hooper observed that Plaintiff's eyes were glossy and that his conduct indicated that he was not stopping. (*Id*. ¶ 19.) Officer Gearhart saw that Plaintiff had slowed to a walk but continued towards Officer Hooper. (*Id*. ¶ 20.) At this point, since Plaintiff had refused to comply, Officer Gearhart decided that a take-down would be preferable to using the Taser. (*Id*. ¶ 22.) Thus, Officer Gearhart took control of Plaintiff's right arm. (*Id*. ¶ 23.) As Officer Gearhart grabbed his arm, Plaintiff was in motion and dropped to his knees. (*Id*. ¶ 25.) Officer Hooper observed that Plaintiff responded by tensing his right arm and resisting. (*Id*. ¶ 26.) Officer Gearhart also felt that Plaintiff "stiffened up." (*Id*. ¶ 26.) Officer Hooper took control of Plaintiff's left arm with the Taser still in his hand. (*Id*. ¶ 27.) Plaintiff felt a forearm at the base of his skull that he believed was Officer Hooper's. (*Id*. ¶ 28.) Officer Gearhart then performed an arm-bar takedown of Plaintiff. (*Id*. ¶ 29.) At some point, Plaintiff's resistance ceased and Officers Gearhart, Hooper, and Plaintiff all went to the ground quickly. (*Id*. ¶ 30.) Officer Eshenbaugh came up behind Plaintiff and placed his right knee in the small of Plaintiff's back. (*Id*. ¶ 31.) Officer Eshenbaugh did not apply his full weight on his knee, and his knee was on Plaintiff's back for approximately five seconds. (*Id*.) Officer Hooper then handcuffed Plaintiff. (*Id*. ¶ 32.) While taking Plaintiff to the ground, Plaintiff's mouth struck the pavement causing broken front teeth and bleeding. (*Id*. ¶ 37.) He also sustained cuts and abrasions to his ear, nose, and mouth, as well as a bruise to his back. (*Id*.) Plaintiff admits that he consumed 6-7 beers at a bar and then attempted to jog home before he encountered the officers. (*Id*. ¶ 33.)

### B. Plaintiff's Evidence

Plaintiff's version of the facts are as follows: Around midnight, Plaintiff decided to head home from Superstition Skies, a bar and restaurant in Apache Junction, Arizona. (Doc. 54 ¶ B.) He decided to walk/jog to his nearby home. (*Id*.) On his way home walking

southwest on Apache Trail, he noticed a patrol car traveling in the opposite direction past him. (*Id*. ¶ D.) The vehicle slowed as it approached him, sped up after it passed him, and then drove off. (*Id*.) Anthony then resumed his run. (*Id*. ¶ E.) As he rounded the corner and proceeded north on Plaza Drive, he saw that there was a southbound patrol car. (*Id*.) As he proceeded north, the oncoming patrol car cut across the road diagonally towards the sidewalk on which he was running. (*Id*.) A police officer, now known to be Officer Hooper, jumped out of the patrol car, drew a weapon, and starting yelling at Plaintiff to stop. (*Id*.) Plaintiff was "stunned," but he immediately began to comply. (*Id*. ¶ F.) Since he had been running, it took a few steps (not more than three) for him to bring himself to a complete stop. (*Id*. ¶ F.) He brought his hands forward as not be perceived as a threat and actively listened to and complied with the police commands. (*Id*.) Officer Gearhart rolled up to the scene shortly after Officer Hooper and began to yell commands. (*Id*. ¶ G.) In the commotion, with both officers yelling commands at the same time, it was difficult for Plaintiff to know what exactly they wanted him to do. (*Id*. ¶ H.) He got down on his knees as he perceived that that was what they wanted him to do. (*Id*.) While in the kneeling position, Plaintiff was focused on Officer Hooper because he believed that Officer Hooper was about to shoot him. (*Id*. ¶ I.) Officer Gearhart then grabbed ahold of his right arm and began to pin it behind his back. (*Id.*) Then Officer Hooper holstered his weapon, grabbed ahold of Anthony's left arm, and pinned it behind his back. (*Id.*) Plaintiff was kneeling on the sidewalk offering no resistance with both arms behind his back when Officer Hooper applied his forearm to the back of Anthony's head and drove his face into the concrete. (*Id*.) The impact knocked him unconscious and broke several of his teeth. (*Id.*) During the investigation, it was found that Plaintiff was not the suspect who shoplifted from Circle K. (Doc. 52-1 at 4.)

**II.    LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under

the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the non-moving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper,

and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

### III. DISCUSSION

At the outset, the Court notes that Plaintiff opposes Defendants' Motion for Summary Judgment on the § 1983 claim as to Defendant Hooper and his spouse, but not as to any other Defendant. (Doc. 54 at 1.) Thus, the Court will grant summary judgment on the § 1983 claim for all Defendants besides Defendant Hooper and his spouse. Additionally, Plaintiff opposes summary judgment for the state law battery claim against Defendant Hooper, his spouse, and the City of Apache Junction, but not as to any other Defendant. (*Id.* at 2.) Thus, the Court will grand summary judgment on the state law battery claims to all Defendants besides Defendant Hooper, his spouse, and the City of Apache Junction.

#### A. § 1983 Claim

##### 1. Qualified Immunity Rule of Law

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability. *Id.* The doctrine "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Courts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citing *Pearson*, 555 U.S. at 236). "When this test is properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Hernandez v. City of San Jose*, 897 F.3d 1125, 1132-33 (9th Cir. 2018) (quoting *al-Kidd*, 563 U.S. at 743)).

A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of the right are sufficiently clear such that "every 'reasonable official would [have understood] that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (citations omitted). Where excessive force is at issue, police officers "are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018) (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)). To be clearly established, the court must identify a case "'where an officer acting under similar circumstances'" was held to have violated the constitutional right at issue. *S.B. v. Cty. of San Diego*, 864 F.3d 1010 (9th Cir. 2017). Thus, liability will not attach unless there is "'a case where an officer acting under similar circumstances … was held to have violated the Fourth Amendment.'" *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019) (quoting *White v. Pauly*,137 S.Ct. 548, 552 (2017)). To achieve this kind of notice, "the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (citing *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). The plaintiff bears the burden of showing that the rights allegedly violated were clearly established. *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (citation omitted). Each defendant is entitled to an "individualized analysis" of qualified immunity. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citations omitted). The trend of the Supreme Court's qualified immunity jurisprudence is "toward resolving qualified immunity as a legal issue before trial whenever possible." *Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017). Where disputed facts exist, courts can determine whether the denial of qualified immunity was appropriate

by assuming that the version of the material facts asserted by the non-moving party is correct. *Bingue v. Prunchak*, 512 F.3d 1169, 1172-73 (9th Cir. 2008) (citing *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001)).

### 2. Excessive Force Rule of Law

Claims of excessive force are analyzed under the reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Objective reasonableness turns on the facts and circumstances of each case. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."). Reasonableness is assessed by weighing the type and amount of force used with: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003) (citing *Graham*, 490 U.S. at 396). "Of all these factors, the 'most important' one is 'whether the suspect posed an immediate threat to safety of the officers or others.'" *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017). "'Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed.'" *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (quoting *Glenn v. Washington Cty.*, 673 F.3d 864, 870 (9th Cir. 2011)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

### 3. Analysis

The Court will begin by analyzing the first prong of the qualified immunity analysis—whether officer Hooper violated a statutory or constitutional right of Plaintiff. *See al-Kidd*, 563 U.S. at 735. The majority of dispositive facts are disputed by the parties.

1 Accepting Plaintiff's evidence, the amount of force used by Officer Hooper was not
2 objectively reasonable. First, the severity of the suspected crime was not severe. The police
3 were simply looking for a person who was suspected of shoplifting at Circle K. The suspect
4 was not known to have any weapons. Second, Plaintiff did not pose a threat to the safety
5 of the officers or others. Under his version of the facts, he was complying with officer
6 commands by kneeling and offering no resistance when Officer Hooper applied force to
7 the back of his neck caused his face to hit the concrete. Third, taking Plaintiff's evidence
8 as true, he was not resisting or attempting to evade arrest by flight. Therefore, there is a
9 dispute of material facts as to whether Officer Hooper engaged in excessive force.

Further, if Plaintiff's evidence is accepted as true, the excessive force engaged in by Officer Hooper was a clearly established violation of constitutional law. The state of the law at the time of the incident was such that it would have given Officer Hooper notice that his conduct of driving Plaintiff's face into the concrete while Plaintiff was on his knees and offering no resistance was a clearly established violation of constitutional law. The Ninth Circuit has stated that "we need look no further than *Graham*'s holding that force is only justified when there is a need for force." *Blackenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) ("We conclude that this clear principle would have put a prudent officer on notice that gang-tackling without first attempting a less violent means of arresting a relatively calm trespass suspect—especially one who had been cooperative in the past and was at the moment not actively resisting arrest—was a violation of that person's Fourth Amendment rights."). The unprovoked use of force that Plaintiff claims occurred would clearly violate this principle. Accordingly, the Court finds that Plaintiff is not entitled to qualified immunity, and summary judgment on Plaintiff's § 1983 excessive force claim must be denied due to the dispute of material facts between the parties.

### B. State Law Battery Claim

In order to establish a battery claim, a plaintiff must prove that the defendant intentionally caused a harmful or offensive contact with the plaintiff to occur. *Johnson v. Pankratz*, 2 P.3d 1266, 1268 (Ariz. Ct. App. 2000). An Arizona statute provides a

justification for the use of physical force during law enforcement activities. It reads:

> A person is justified in threatening or using physical force against another if in making or assisting in making an arrest or detention or in preventing or assisting in preventing the escape after arrest or detention of that other person, such person uses or threatens to use physical force and all of the following exist:
>
> 1. A reasonable person would believe that such force is immediately necessary to effect the arrest or detention or prevent the escape.
> 2. Such person makes known the purpose of the arrest or detention or believes that it is otherwise known or cannot reasonably be made known to the person being arrested or detained.
> 3. A reasonable person would believe the arrest or detention to be lawful.

A.R.S. § 13-409.

Here, as noted above, Plaintiff's version of the facts differs substantially from that of Defendants'. Taking Plaintiff's evidence as true, a reasonable person would not believe that the force used by Officer Hooper was immediately necessary to effect the arrest or detention. Under Plaintiff's version of the events, he complied with the officers' commands and was offering no resistance when Officer Hooper applied the force that sent his face into the concrete. Therefore, there is a dispute of fact as to whether Arizona's statutory exception to battery would apply. Accordingly, the Court denies summary judgment on this Plaintiff's state law battery claim.

## IV. CONLCUSION

Accordingly,

**IT IS ORDERED** granting in part and denying in part Defendants' Motion for Summary Judgment (Doc. 51) as outlined above.

**IT IS FURTHER ORDERED** vacating the oral argument scheduled for September 13, 2021.

Dated this 8th day of September, 2021.

Honorable Susan M. Brnovich
United States District Judge